```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/05/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
CERTAIN UNDERWRITERS AT LLOYD'S, :
LONDON, INDIAN HARBOR INSURANCE :
COMPANY, QBE SPECIALTY INSURANCE :
COMPANY, GENERAL SECURITY :
INDEMNITY COMPANY OF ARIZONA, :
UNITED SPECIALTY INSURANCE :
COMPANY, LEXINGTON INSURANCE :
COMPANY, PRINCETON EXCESS AND :
SURPLUS LINES INSURANCE COMPANY, :    22-CV-8612 (VEC)
INTERNATIONAL INSURANCE COMPANY :
OF HANNOVER SE, and OLD REPUBLIC :    OPINION & ORDER
UNION INSURANCE COMPANY, :
                                     :
                        Petitioners, :
            -against-                :
                                     :
THE FALLS OF INVERRARY              :
CONDOMINIUMS, INC.,                 :
                                     :
                        Respondent.  :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

The parties are engaged in arbitration related to a dispute concerning insurance coverage of hurricane damage to Respondent's property. Pets. Mem., Dkt. 5 at 2. Under the terms of the applicable arbitration agreement, the parties' arbitrators are supposed to appoint an umpire to resolve any disputes between them, but they have not done so. *See id.*; Krejci Decl. Ex. 1 ("Ins. Pol."), Dkt. 4 § 7(C). Petitioner, relying on section 5 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, asks the Court to appoint an umpire. Pet., Dkt. 1 at 2. Respondent opposes the Petition and argues that the parties should be allowed to select their own umpire; alternatively, Respondent requests that the Court select one of Respondent's candidates. Resp. Opp., Dkt. 22. For the following reasons, the Petition is GRANTED, and the Court selects Mr. Gleeson as umpire.

1

I.      **The Court Has the Authority to Appoint an Umpire**

The Court finds that it has the power to appoint an umpire pursuant to the FAA and the parties' contract. By August 18, 2022, both parties had named their party arbitrators. Pet. ¶ 21. It is undisputed that the party arbitrators have failed to agree on an umpire despite exchanging a half dozen names. Pet. ¶ 24; *see also* Resp. Opp. 5–6. Pursuant to section 5 of the FAA, upon application of a party to a dispute, the district court must "designate and appoint an arbitrator . . . or umpire, as the case may require," following "a lapse in the naming of an arbitrator . . . or umpire . . . ." 9 U.S.C. § 5; *see also Certain Underwriters at Lloyd's, London v. Vintage Grand Condo. Ass'n, Inc.*, No. 18-CV-10382, 2019 WL 760802, at *3 (S.D.N.Y. Feb. 6, 2019) (analyzing an identical contractual provision and holding that if the party arbitrators "fail to agree on the identity of a neutral Umpire, then either party may invoke Section 5 of the FAA to seek court appointment of an umpire").

Respondent argues that there has been no lapse, and the petition is premature. Resp. Opp. at 6. Despite Respondent's representation that the party arbitrators' discussion regarding the appointment of an umpire is "active," the party arbitrators have made no progress toward the selection of an umpire beyond rejecting all candidates proposed by the other party. *Id.*; *see also* Pet. ¶ 24.

The Second Circuit has clearly held that a "lapse" occurs where the parties have embarked on a contractually agreed-upon umpire selection process by proposing candidates to serve as umpire but cannot agree on a candidate.[1]  *See Odyssey Reinsurance Co. v. Certain*

---

[1]     The cases cited by Respondent in support of its argument that the Court lacks authority to appoint an umpire are inapposite. For example, in *IRB-Brasil Resseguros S.A. v. National Indemnity Co.*, No. 11-CV-1965, 2011 WL 4686517, at *4 (S.D.N.Y. Oct. 6, 2011), the court did not appoint an umpire because petitioner had sought court intervention before the thirty-day period provided by the parties' contract to appoint an umpire had elapsed; the instant contract does not specify a deadline by which an umpire is to be appointed. Furthermore, in *RLI Insurance Co. v. Kansa Reinsurance Co.*, No. 19-CV-4319, 1991 WL 243425, at *4 (S.D.N.Y. Nov. 14, 1991), the court refrained from appointing an umpire because the parties had not drawn lots for an umpire as required by their

*Underwriters at Lloyd's London Syndicate 53*, 615 F. App'x 22, 23 (2d Cir. 2015) (holding that a lapse exists where "[e]ach party has designated its own pick, whom the other side refused . . . ." (quoting *Stop & Shop Supermarket Co. v. United Food & Com. Workers Union Loc. 342*, 246 F. App'x 7, 11 (2d Cir. 2007)).  This is true even when, as here, the parties have continued to exchange names after litigation commenced but have still failed to agree upon an umpire.  *See id*.

### II.     The Court Appoints Mr. John Gleeson as Umpire

Respondent further argues that, to the extent the Court has jurisdiction to appoint an umpire, it may not examine the qualifications of the proposed candidates.  Resp. Opp. at 7.  While the FAA limits courts' authority to examine the qualifications of an umpire once he or she is selected, the Second Circuit has expressly held that section 5 of the FAA grants courts the authority to examine candidates' qualifications in exercising their authority to appoint an umpire.  *See Odyssey Reinsurance Co.*, 615 F. App'x at 23 n.2 (holding that a district court may examine a candidate's "qualifications to serve" as umpire as an incidental exercise of its authority to appoint an umpire pursuant to FAA § 5).

Pursuant to the parties' agreement, "[u]nless the parties otherwise agree, the Arbitration Tribunal shall consist of persons employed or engaged in a senior position in Insurance underwriting or claims."  Ins. Pol. § 7(C).  Neither party has indicated the existence of any applicable agreement to the contrary.  In analyzing an identical contractual provision, the court in *Certain Underwriters at Lloyd's, London v. Vintage Grand Condominium Association, Inc.*, held that this qualification included individuals who currently have a practice including arbitration or mediation of insurance-related matters.  2019 WL 760802, at *3–4.

---

contract.  In the present matter, the contract only requires the party arbitrators to agree upon an umpire, *see* Krejci Decl. Ex. 1 ("Ins. Pol."), Dkt. 4 § 7(C); they have attempted to do so but cannot, *see* Pet., Dkt. 1 ¶ 24.

The Court has before it six candidates for umpire (three from each party). All candidates have deep experience in insurance-related matters and are currently engaged in alternative dispute resolution of insurance disputes. *See* First Krejci Decl. Exs. 3–6, Dkt. 4; Insua Decl. Exs. 3–4, Dkt. 23. Thus, the selection of any of the proposed candidates as the umpire would be appropriate.

The arbitration agreement selects New York law and sets New York as the seat of arbitration. Ins. Pol. § 7(C). Petitioners object to one of Respondent's proposed candidates, Mr. Richard J. Suarez, primarily because (1) Mr. Suarez has less experience applying New York law than candidates who have practiced law in New York for many years, and (2) it may be more costly for a Florida-based umpire to oversee arbitration proceedings in New York compared to a New York-based umpire. Pets. Mem. at 8. The Court agrees.[2] *See In re Arb. Between Nat. Union Fire Ins. Co. of Pittsburgh, P.A. v. Pers. Plus, Inc.*, 954 F. Supp. 2d 239, 250 (S.D.N.Y. 2013) (evaluating the umpire candidates' "base of knowledge"); *Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003) (noting that one of the purposes of the FAA is to reduce the costs of dispute resolution).

Accordingly, the Court limits its consideration to the New York-based candidates. The Court finds a former judge who previously presided in a New York-based court is best suited to serve as an umpire in this matter in light of the vast experience that New York-based judges have applying New York law and resolving complex disputes.

---

[2] Respondent argues that the risk of increased cost associated with a Florida-based umpire's travel to New York is irrelevant because the parties could agree to conduct all or part of the arbitration proceedings remotely. Resp. Opp., Dkt. 22 at 8. The parties have not represented that any such agreement exists. Even setting aside the issue of cost, however, the former federal district court judges from New York are better qualified to apply New York law and to oversee the arbitration of complex insurance disputes governed by New York law.

While both former judges who previously presided over courts sitting in New York would be excellent umpires, the Court finds that Mr. John Gleeson is better suited to serve as umpire in this matter.[3]  Respondent does not dispute Mr. Gleeson's qualifications or raise any objections to his suitability as an umpire — except for the fact that it would prefer one of its own candidates to be selected.  *See* Resp. Opp. at 7–8.

As a former federal judge in the Eastern District of New York, Mr. Gleeson has vast experience resolving insurance-related disputes implicating New York law, including insurance disputes concerning hurricane damage.  Notably, during Mr. Gleeson's tenure as a federal judge, the Eastern District experienced a maelstrom of insurance-related litigation following Hurricane Sandy, which had a disproportionate impact on areas within the Eastern District compared to the Southern District of New York.[4]  As a judge sitting in the Eastern District, then-Judge Gleeson presided over insurance disputes stemming from damage caused by Hurricane Sandy.  *See, e.g.*, *Woodlawn Fulton Props., LLC v. Great Lakes Reinsurance (UK) PLC*, No. 13-CV-5324, 2013 WL 6577146 (E.D.N.Y. Nov. 20, 2013).  He has also continued to work on insurance-related matters in the private sector.  *See* Krejci Decl. Ex. 4; Pets. Mem. at 5.  Accordingly, the Court finds that Mr. Gleeson is the best candidate to manage this arbitration, which applies New York law and concerns insurance coverage of hurricane damage.

---

[3]  On March 22, 2023, the Court notified the parties that the Undersigned knows and is friendly with Mr. Gleeson but did not view that as a basis for recusal.  Order, Dkt. 38.  The Court ordered any party who viewed that fact as a basis for recusal to file a letter stating its grounds for seeking recusal.  On March 31, 2023, Respondent filed a letter stating that it did not seek the Undersigned's recusal; Petitioners did not respond.  *See* Resp. Letter, Dkt 39 ("The Falls . . . does not question the Court's ability to issue an impartial ruling in this matter . . . .").

[4]  *See* The City of New York, A Stronger, More Resilient New York 11 (2013), available at https://www.nyc.gov/site/sirr/report/report.page.  During Mr. Gleeson's tenure as a federal district court judge, the Eastern District instituted a special mediation program to address insurance-related litigation concerning the damage from Hurricane Sandy in the Eastern District.  *See Hurricane Sandy Mediation Program*, U.S. Dist. Ct. E. Dist. of N.Y., https://www.nyed.uscourts.gov/hurricane-sandy-mediation-program (last visited Apr. 5, 2023).

### III.     Conclusion

For the foregoing reasons, the Court exercises its authority to appoint Mr. John Gleeson as umpire.  As that is the only relief sought in this case, the Clerk of Court is respectfully directed to terminate the open motion at docket entry 3 and to CLOSE the case without prejudice to either party reopening the case within **thirty days** if Mr. Gleeson is unable or unwilling to serve as umpire in this matter.  Any application to reopen filed after **thirty days** may be denied on that basis alone.

**SO ORDERED.**

**Date:  April 5, 2023**  
**New York, New York**

**VALERIE CAPRONI**  
**United States District Judge**